PULLMAN CAR LINES, UNITED STATES ADMINISTRATION, EMPLOYER, d. b. a.; *v.* PATRICK RILEY, CLAIMANT, p. b. r.

1. COMMERCE—EMPLOYEE DIRECTING MOVING OF COAL CAR IN YARDS NOT ENGAGED IN "INTERSTATE COMMERCE."

An employee, injured while directing the moving of a coal car from one point to another in a yard connected with the shops of a sleeping car company by which he was employed, was not engaged in interstate commerce within Workmen's Compensation Law 1917, § 142, providing that such article should not apply to employees so engaged, where the laws of the United States provide for compensation for such injury.

2. RAILROADS—AWARD UNDER WORKMEN'S COMPENSATION ACT MAY BE MADE AGAINST CORPORATION UNDER FEDERAL CONTROL.

The Industrial Accident Board may make a binding award under Workmen's Compensation Law 1917 against the Pullman Car Company for a car shop employee's injuries received while the company's property was under the control of the Director General of Railroads, acting under the Federal Control Act of March 21, 1918, § 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), and General Order No. 50 issued under the President's authority.

3. MASTER AND SERVANT—COMPENSATION FOR LOSS OF FOOT AND TOTAL DISABILITY HELD PROPERLY AWARDED.

Under Workmen's Compensation Law 1917, § 103, subsec. (c), allowing an award of $10 per week for 135 weeks for the loss of a foot, and subsection (a), allowing the same compensation for 270 weeks for total disability, with a lesser amount per week for the balance of claimant's life, the maximum not to exceed $4,000, the Industrial Accident Board may award a claimant such sum per week for 135 weeks for the loss of his foot with the same amount per week for the ensuing period of 135 weeks for total disability, and a lesser sum for the requisite number of weeks thereafter to make up the sum of $4,000.

*(February and April, 1921)*

CONRAD and HEISEL, J. J., sitting.

*John W. Huxley, Jr.,* for appellants.

*Charles F. Curley* for appellee.

Superior Court for New Castle County, January and March terms, 1921.

APPEAL No. 135, March Term, A. D. 1920.

Proceeding before the Industrial Accident Board (claim No. 5787), under the Delaware Workmen's Compensation Law, by Patrick Riley, claimant, against Pullman Car Lines, Unites States Administration, employer, to obtain compensation for personal

injuries.   The Board awarded compensation, under the provisions of chap. 233, 29 *Del. Laws*, and the employer appeals.   Award affirmed.

The claimant and the employer failing to reach an agreement as to compensation, the claimant petitioned the Board to hear and determine the matter in accordance with the facts and the law.

In the statement of facts, inter alia, filed before the Board, the claimant alleged as follows:

"My age is fifty-nine years; I am not mentally qualified to earn anything except at some kind of physical labor, and the results of my endeavors to move about, together with the advice of my physician, convinces me that I shall never be able to earn anything in the future.

"As a direct result of the injury to the head the nervous system has been so shattered as to cause a total disability for work and a claim is respectfully made not only for a disability for work from a permanent injury, namely, the loss of a foot, but also for total disability for work payable under *section* 103 (a).

"Dated this seventh day of November, 1919."

At the hearing, all the members of the Board being present, also the parties and their attorneys, the following admissions were made:

That at the time of the accident the plant known as the Pullman plant, in Wilmington, Delaware, was in possession and under the control of the Director General of Railroads.

That prior to the date of the accident, neither the employer nor the employee had filed with the Industrial Accident Board notice that they would not be bound by the compensatory provisions of "the Delaware Workmen's Compensation Law of 1917."

That the employer has paid medical, hospital and surgical services in excess of twenty-five dollars.

That in so far as the Director General of Railroads is concerned, the accident arose out of and in the course of claimant's employment.

That at the time of the accident claimant's wages were twenty-four dollars per week.

That as a result of the injury Patrick Riley's left leg was crushed below the knee, and was amputated at a point between the knee and the ankle.

The general character of the testimony adduced before the Board sufficiently appears in the conclusions of fact found by the Board from the evidence and admissions upon the record.

The opinion of the Board is as follows:

This case comes before the Board upon an application made by Patrick Riley pursuant to the provisions of section 108 of "the Delaware Workmen's

Statement.

Compensation Law of 1917." From the evidence and admissions on the record in the above-entitled case, the Board finds:

On the thirteenth day of December, 1918, Patrick Riley sustained an injury by accident arising out of and in the course of his employment as an employee of the Pullman Company at the Pullman car shops in the city of Wilmington and state of Delaware, the said the Pullman Company then being in the possession and under the control of the Director General of Railroads. The accident occurred while the said Patrick Riley was in the performance of his regular duties in directing and superintending the moving of a car containing coal from one point to another in the yard connected with the shops of the company in question. This car was an old Pullman car from which the roof and part of the sides had been removed in order to fit it for use in hauling freight around the yard at the Pullman plant and was not used outside the yard. The coal so carried was used for fuel in the boilers which ran the machinery in the Pullman plant. The accident causing the injury resulted from the breaking of a hook which held a block through which a steam-propelled cable passed, and this cable was being used at the time in question in moving the cars containing said coal. By the breaking of the hook the block and cable combined struck Riley, throwing him about fifteen or twenty feet and severely injuring him. His left leg was crushed and was amputated between the ankle and the knee, and he had a wound on his head which required at least four or five stitches to close. He has been in a highly nervous and physically crippled condition ever since the accident and it is impossible to tell from the evidence, although immaterial, whether these conditions are the result of the injury to the head or of shock, or a resultant effect of his inability to perform manual labor, but the Board finds that his said condition resulted from one or the other or all of these causes because of the fact that prior to the accident Riley had been in the best of health, and because there is no evidence showing any other cause for his changed condition. In addition, although Riley is using crutches, he is unable to move around except with considerable assistance and suffers greatly every time that he attempts to move. We find that he is now totally disabled for work and that he has suffered such total disability ever since the date of the accident, and that such total disability will continue for at least one year after the hearing and will in all reasonable probability be permanent. If an award of compensation can be made Patrick Riley is undoubtedly entitled to compensation under the provisions of subsection (c) of *section* 103 of the Compensation Act for the loss of a foot and may also be entitled to further compensation under subsection (a) or subsection (b) of said *section*, for total or partial disability. His wages at the time of the accident were twenty-four dollars per week, and his medical, hospital and surgical services in excess of twenty-five dollars have been paid by the employer.

The following questions are presented for our determination:

[1] 1. Was the said Patrick Riley at the time of the accident in question an employee coming within the provisions of *section* 142 of the said Compensation Act which provides: This article shall not apply to employees injured or killed while engaged in interstate or foreign commerce, nor to their employers, in case, and whenever, the laws of the United States provide for compensation or for liability for such injury or death."

The authorities on the point in question are in conflict, but the Board holds that under the facts of this case Patrick Riley was not an employee coming within the provisions of said section because he was not at the time of the injury in question engaged in Interstate commerce; furthermore, in the opinion of the Board, even though Patrick Riley had been engaged in in-

terstate commerce at the time of the injury the federal law would not provide for compensation or for liability under the state of facts developed from the evidence and admissions on the record. (See the reasoning in the case of *Hopkins v. Pennsylvania Railroad Company*, 1 *Md. Workmen's Comp. Cas.* 190.)

[2] 2. Has this Board jurisdiction to make a binding award against the Pullman Company, a corporation of the state of Illinois, it being in the possession of and under the control of the Director General of Railroads, or should the award be made against Pullman Car Lines, United States Railroad Administration, or should the award under the facts of this case and for the protection of the rights of the injured employee, be made against both?

There is considerable conflict in the decisions, and the Board will only refer to the two cases which appeal to it as having the most force.

In the case of *Lavalle v. Northern Pacific Railway Co.*, 143 *Minn.* 74, 172 *N. W.* 918, 4 *A. L. R.* 1659, it appeared that the plaintiff brought action against a railway company in September, 1918, pursuant to *section* 10 of the *Federal Control Act of March* 21, 1918 (*U. S. Comp. St.* 1918, *U. S. Comp. St. Ann. Supp.* 1919, § 3115¾j), providing that actions at law may be brought against carriers and judgment rendered "as now provided by law." On October 28, 1918, the Director General issued *General Order No.* 50. After the issuance of the order the defendant moved that the Director General be substituted as defendant and that the action be dismissed as to the railway company. The trial court granted the motion and the plaintiff appealed. The court reversed the order holding that while the assumption of control of the railroads was within the power granted by the Constitution to the federal government and that Congress, the President, and the Director General had the power to make regulations for the control and operation of the railroads and of suits by or against them, yet that when an act of Congress and an order of the Director General were in conflict, the act of Congress would prevail. The court pointed out that the *Federal Control Act* (*U. S. Comp. St.* 1918, *U. S. Comp. St. Ann. Supp.* 1919, §§ 3115¾a-3115¾p) gave one having a cause of action arising out of the operation of the railroad under government control the right to sue the railroad company thereon and that insofar as *General Order No.* 50 denied to the plaintiff that right it was in excess of the powers of the Director General and void.

In the case of *Bryant v. Pullman Co.* 188 *App. Div.* 311, 177 *N. Y. Supp.* 488, it appeared that a Pullman sleeping car porter having sustained an injury in the course of his employment sought compensation under the New *York Workmen's Compensation* (*Consol. Laws c.* 67). It was shown that at the time of the accident and injury the cars of the Pullman Company were being operated by the Director General of Railroads by virtue of the War Comtrol Acts and the proclamation of the President. For this reason it was argued by the Pullman Company in resisting an award that at the time in question the claimant was the employee of the Director General and not of the Pullman Company. In affirming the award the court said:

"The appellant [The Pullman Company] raised no question with the Government as to the effect or validity of the Act of Congress or the proclamation of the President, but acquiesced in them and operated its cars as contemplated by the act. If, instead of so doing, it had contested the question with the Government, a different situation might have arisen. But having operated its cars under the act, it cannot now raise the question that the government could not compel it to do so. * * * It did operate its cars, and the claimant was its employee in that service. * * * In effect the government was the lessee of the cars, the company the lessor, and by the terms of

the lease the business was carried on by it under governmental control. *  *  * If the lessee was carrying on its business through the lessor, and the latter is required to pay compensation under this award, it has ample recourse against the lessee, and undoubtedly any liability imposed upon it will be met in the adjustment of the rentals. We consider the question more one of technicality than of substance, and are prepared to hold that for the purposes of the protection of the claimant under the Workmen's Compensation Law *  *  * the appellant was his employer and that the award may stand."

The Board is of the opinion that an award should be made against the Pullman Company, a corporation of the state of Illinois, and will make an award accordingly, but it will hereinafter reserve the right to subsequently make and award against Pullman Car Lines, United States Railroad Administration, in case its award against the Pullman Company, a corporation of the state of Illinois, shall be reversed on appeal, in order that the statute of limitations shall not be allowed to operate against the claimant.

[3] 3. Assuming that the Board has jurisdiction to make an award against either, and that in such case an award can be made under the provisions of subsection (c) of *section* 103 of "the Delaware Workmen's Compensation Law of 1917" compensating Patrick Riley for the loss of a foot, can the Board make a further award compensating Riley for total disability?

The accident in question happened before the 1919 amendments to the *Workmen's Compensation Law* (30 *Del. Laws, c.* 203), and the compensation payable in this case must therefore be determined in accordance with the provisions of "the Delaware Workmen's Compensation Law of 1917", as the same is set forth in *chapter* 233, *vol.* 29, Delaware Laws.

The claimant has lost a foot, and subsection (c) of *section* 103 says that he is entitled to compensation at the rate of ten dollars per week for one hundred and thirty-five weeks. If not otherwise disabled for work by the same accident he would receive said compensation for said period even though restored to full earning power. Claimant is totally disabled for work and subsection (a) of said *section* 103 says that he shall, during the period of total disability receive compensation at the rate of ten dollars per week for two hundred and seventy weeks, and a lesser amount per week for the balance of his life provided that the maximum shall not exceed four thousand dollars. In either case his compensation ceases with his death. From an examination of the whole act we find that the employee can sustain no greater disability than total disability, and in fact, that subsection (c) says that the loss of both feet or certain other designated combinations of injuries shall constitute total disability.     The employer is not required to pay any greater compensation per week than the compensation for total disability. The maximum compensation per week for total disability is ten dollars. The maximum period during which compensation could be paid in this case for total disability alone is two hundred and seventy weeks at ten dollars per week, and two hundred and seventy and five-sixth weeks at four dollars and eighty cents per week, thus using up the total sum of four thousand dollars allowed. It will, therefore, be seen that the claimant cannot be compensated for the full period under both subsections (a) and (c); also that he cannot have the two periods run concurrently and receive twenty dollars per week. An award cannot be made in this case for total disability alone because under such an award if the employee should become able during the first one hundred and thirty-five weeks to earn the same wages as before the accident his compensation could cease, and he would thus be deprived of some portion of the compensation to which he is entitled under subsection (c) for the loss of a foot. If he should be awarded compensation only under subsection (c) notwithstanding that he is

totally disabled for work growing out of injuries other than those resulting from the loss of a foot, he would be deprived of rights to which, according to our findings of fact, he is now entitled. We must, therefore, if possible, so construe subsections (a) and (c) as to preserve to the claimant all of his rights under the act, and we have decided that if we shall allow him compensation for total disability and shall at the same time preserve his rights under subsection (c) for one hundred and thirty-five weeks of said period of total disability as though the loss of the foot constituted a part of the total disability, we feel that we will have satisfied the requirement of the law, and it is our conclusion that such is the law.

The following authorities have been helpful in reaching our third conclusion: *In re Denton, In re Good,* 65 *Ind. App.* 426, 117 *N. E.* 520; *Marhoffer v. Marhoffer,* 220 *N. Y.* 543, 116 *N. E.* 379; *Fredebburg v. United Railways,* 168 *App. Div.* 618, 154 *N. Y. Supp.* 351, 170 *App. Div.* 942, 154 *N. Y. Supp.* 359; *Limron v. Blair,* 181 *Mich.* 76, 147 *N. W.* 546.

It is therefore adjudged and awarded this 6th day of April, A. D. 1920 as follows:

That the Pullman Company, a corporation of the State of Illinois, shall pay compensation to Patrick Riley as follows:

(a) For the loss of a foot, ten dollars per week for one hundred and thirty-five weeks for the period begun on the twenty-eighth day of December, A. D. 1918, in accordance with the provisions of subsection (c) of *section* 103, *c. 233, vol. 29, Delaware Laws.*

(b) For total disability, ten dollars per week for the period of one hundred and thirty-five weeks beginning one hundred and thirty-five weeks after the twenty-eighth day of December, 1918, in accordance with the provisions of subsection (a) of *section* 103, *c. 233, vol. 29, Delaware Laws.*

(c) For total disability, four dollars and eighty cents per week for the period of two hundred and seventy and five-sixths weeks beginning two hundred and seventy weeks after the twenty-eighth day of December, 1918, in accordance with the provisions of *chapter* 233, *vol. 29,* Delaware Laws.

The Industrial Accident Board reserves the right, under the authority set forth in *section* 109 of "the Delaware Workmen's Compensation Law of 1917" to modify this award in case the disability of Patrick Riley shall cease or in case his disability shall become partial.

In order that the statute of limitations shall not be permitted to operate against claimant, the Industrial Accident Board reserves the right to subsequently make an award against the Pullman Car Lines, United States Railroad Administration, in case its award against the Pullman Company, a corporation of the State of Illinois, shall be reversed on appeal.

Award made this 6th day of April, A. D. 1920.

(Signed by the members of the Board.)

Whereupon an appeal was taken to the superior court for New Castle county upon the following grounds:

1. That no award should have been made against the Pullman Company, a corporation of the state of Illinois, for the reason that the evidence did not show that Patrick Riley was in the employ of said defendant company at the time of the accident.

2. That the evidence shows that Patrick Riley was, at the time of the accident, engaged in interstate commerce and that therefore no award can be made in this cause by the Industrial Accident Board of the state of Delaware, for the reason that it is without jurisdiction in this cause.

3. That there is nothing in the Delaware Workman's Compensation Law of 1917 to justify concurrent compensation for temporary total disability and permanent total disability and under the schedule for total disability such a construction is contrary to the intention of the Delaware Legislature.

4. That the evidence did not show permanent disability.

5. That the Industrial Accident Board of the state of Delaware has no power or jurisdiction under the Delaware Workmen's Compensation Law of 1917 at this time or subsequently to make an award in the above stated cause against this defendant for the reason that a full and complete award has already been made by said Board to the said Patrick Riley for compensation and that the Industrial Accident Board of the state of Delaware is without power or jurisdiction to suspend the statute of limitations of the state of Delaware, and this you are not to omit; and have you then and there this writ.

It was contended for the appellants that the evidence clearly established the fact that the claimant was not in the employ of Pullman Car Lines at the time he was injured, but that is plant was in possession and under the control of the Director General of Railroads at the time the accident occurred. And that under "the Federal Control Act" (40 Statutes, 451) and the Proclamation of the President, under *chapter* 418, 39 Statutes 645, and Comp. St. 1918, § 1974A, and "General Order No. 50" of the Director General under Comp. St. 1918, § 3115¾h, the Pullman Company had no control, or authority over the claimant, nor over the terms of his employment, or wages; and, in fact, claimant's compensation for wages was paid to him under the Federal Control Act, and not from the money of the Pullman Company. *Section* 135, *par.* 3193pp, Delaware Workmen's Compensation Law of 1917, was cited as showing who are employers subject to the provisions of the act.

It was urged that under the Federal Control Act and the proclamation of the President, the Director General of Railroads was a governmental agency, and that the claimant was injured while in the employ of that agency, and he could not invoke the Workmen's Compensation Act in his favor, and, therefore, the Industrial Accident Board was without jurisdiction, or authority, to make an award in favor of claimant, binding on the Director General of Railroads.

It was conceded that the decisions of the Courts, construing said "General Order No. 50," were conflicting upon the question whether a claimant must bring his claim against the

Director General of Railroads, or against the corporation. *Mardis v. Hines, Director General of Railroads (C. C. A.) 267 Fed.* 171.

The claim was made:

That the possession and control of the Pullman Company by the United States was complete and undivided, and that private ownership by the corporation during the period of such possession and control was displaced. *North. Pac. R. Co. v. North Dakota,* 250 *U. S.* 135, 39 *Sup. Ct.* 502, 63 *L. Ed.* 897.

That there is nothing in the Federal Control Act, or in any order made by authority of the President, which authorizes or contemplates a joint action against the Director General and the Pullman Company for personal injuries suffered by an employee of the Director General. *Blevins v. Hines, etc. (D. C.)* 264 *Fed.* 1005; *Nash v. So. Pac. Co. (D. C.)* 260 Fed. 280. The Pullman Company is not liable to claimant. *Hines, etc., v. Dahn (C. C. A.)* 267 *Fed.* 105; *Erie Railway Co. et al. v. Caldwell (C. C. A.)* 264 *Fed.* 947.

The claimant was, at the time of the accident, engaged in interstate commerce. His testimony was that all the work done in the Pullman plant was done "on cars that go all over the United States; that there was never any local work done there." Whether the claimant was engaged in inter or intra state commerce is directly at issue. *Erie Railroad Co. v. Szary,* 253 *U. S.* 86, 40 *Sup. Ct.* 454, 64 *L. Ed.* 794; *D. L. & W. R. Co., v. Busse (C. C. A.)* 263 *Fed.* 516; *Cen. Railroad of N. J. v. Sharkey,* 259 *Fed.* 144, 170 *C. C. A.* 212; *P. B. &. W. R. Co., v. Smith,* 250 *U. S.* 101, 39 *Sup. Ct.* 396, 63 *L. Ed.* 869.

No award of the Industrial Accident Board should have been made in this case, because the claimant was engaged in interstate commerce at the time of his injury. *Phila. & Read. Ry. Co. v. Hancock,* 253 *U. S.* 284, 40 *Sup. Ct.* 512, 64 *L. Ed.* 907. His right of action for compensation was under the Federal Employers' Liability Act. Our own Workmen's Compensation Law of 1917, *section* 3193ww, specifically excepts a case like this from the provisions of the act.

No award can be made in this case against the Director General of Railroads for the reason that neither he nor the claimant

come within the provisions of the Delaware Workmen's Compensation Law of 1917, *Sections* 3193pp, 3193qq. The Director General does not come within any of the enumerated classes of employers which are made subject to the act.

It was urged in reply that the evidence showed that the claimant was at the time of the accident, and for many years before, had been employed at the Pullman plant, in Wilmington, Delaware, owned and operated by the° corporation defendant, but which had been taken over by the Director General of Railroads, under acts of Congress (39 Statutes, 645, and 40 Statutes, 451) and that although upon taking over by the Director General, the Pullman Company became an instrumentality of the federal government, nevertheless by section 10 of the last above cited statute, the capacity of the carrier to sue and be sued remained the same after as before the government's taking over. *Bryant v. Pullman Co.*, 188 *App. Div.* 311, 177 *N. Y. Supp.* 488; *Postal Tel. Cab. Co. v. Call, District Judge*, 255 *Fed.* 850, 167 *C. C. A.* 178; *Dantzler Co. v. Texas, etc., Ry. Co.*, 119 *Miss.* 328, 80 *South.* 770, 4 *A. L. R.* 1669; *Jensen v. Legh. Val. R. Co.* (*D. C.*) 255 *Fed.* 795.

It is true several federal courts have held "General Order No. 50" of the Director General was legal and have allowed his substitution in place of defendant railroad companies. *Nash v. S. Pac. Co.* (*D. C.*) 260 *Fed.*280; *Rutherford v. Union Pac. R. Co.* (*D. C.* ) 254 *Fed.* 880. None of these courts assumed to declare said *section* 10 unconstitutional; its constitutionality was not questioned.

The better reasoned federal and state decisions hold "General Order No. 50," in so far as it is inconsistent with said section 10, void. *Lavalle v. North. Pac. Ry. Co.*, 143 *Minn.* 74, 172 *N. W.* 918, 4 *A. L. R.* 1659; *Johnson v. McAdoo* (*D. C.*) 257 *Fed.* 757; *Moore v. Atch., etc., Ry. Co.*, 106 *Misc. Rep.* 58, 174 *N. Y. Supp.* 60, 63.

The evidence showed that the claimant at the time of the accident was injured while in the performance of his duties in directing the movement of a car containing coal from one point to another point in the yards of the Pullman plant; that this car was used only for hauling coal and freight between different points

within the yard and was not used outside. The car was carrying fuel for heating the plant boilers. What constitutes work in interstate traffic? *C., B. & Q. R. R. v. Harrington,* 241 *U. S.* 177, 36 *Sup. Ct.* 517, 60 *L. Ed.* 941. The principle of this case covers the case at bar. *Lehigh Val. R. R. Co. v. Barlow,* 244 *U. S.* 183, 37 *Sup. Ct.* 515, 61 *L. Ed.* 1070.

The Delaware Workmen's Compensation Law justifies concurrent compensation for temporary total and permanent disabilities. On this point, the construction of the act by the Industrial Accident Board is so clearly and well presented, it is unnecessary to suggest anything further.

The claimant's presence before the Board, the testimony of himself and the members of his family, and of the two physicians who attended and examined him, fully warranted the finding of total disability.

The Board, in making the award against the Pullman Company, very properly exercised care to prevent the act of limitation operating against the claimant, and in reversing the right to subsequently make an award against the Director General of Railroads in case its award against the Pullman Company should be held as wrongful.

The court should refuse to reverse the award of the Industrial Accident Board, upon highly technical grounds and of a kind upon which the United States Supreme Court may ultimately adopt either way.

The cases cited for appellee, in support of his contention, are, at least, as authoritative as those cited for appellants, on the question whether carriers remained suable during the period of federal control. It would seem that the courts adopting appellant's view paid too little attention to the express language of said section 10, and likewise to the proposition that where an officer derives his authority to act from a statute, that his act must not be in conflict with the statute authorizing it.

It is earnestly submitted that appellants suggest no grounds for reversal save on the question of the party against whom the award should have been made.

The position of the appellants is, in effect, that the claimant should be held incapable of recovering from anybody for his injuries sustained, though no statute even assumes to take away his rights.    The award should therefore be affirmed.

After arguments of counsel, the court, on February 11, 1921, handed down the following:

PER CURIAM.    We have carefully considered the evidence in this case and the law applicable thereto, together with the very full briefs of counsel for both parties.    The questions raised here on appeal were raised also before the Industrial Accident Board, which has set out fully, clearly and at length their finding of fact and law and the reasons for so finding.    We agree fully with these findings and the award based thereon for the reasons stated by the Board; and, therefore, sustain and affirm them.  The costs of appeal are taxed against appellant.

At the March term, 1921, the following stipulation was filed in the case:

And now, to wit, this sixth day of April, A. D. 1921, it is hereby stipulated and agreed, by and between John W. Huxley, Jr., attorney for the above-named Pullman Car Lines, United States Administration, and for the Pullman Company, a corporation of Illinois, and Charles F. Curley, attorney for the above-named Patrick Riley, appellee, that the decision made by the superior court on the above-entitled appeal, on February 11, 1921, be modified, so that the award in the above-entitled case may be against James G. Davis, Director General of Railroads, Agent, under Transportation Act, 1920 (41 *Stat.* 456); and that the superior court in and for New Castle county be asked to modify the said judgment to that end.

(Signed by the attorneys of the parties.)

Whereupon the following order was made:

And now, to wit, this sixth day of April, A. D. 1921, the foregoing stipulation having been filed in the said case, it is hereby

ordered that the judgment handed down on February 11, 1921, in the said case be modified so that the award in the said case shall be against James G. Davis, Director General of Railroads, Agent, under Transportation Act 1920.

[Signed]   HENRY C. CONRAD, Judge.

The same was certified to the Industrial Accident Board, and, thereupon, the following application of the attorneys in the case was made to the Board:

This tenth day of March, 1921, it is hereby stipulated between John W. Huxley, Esq., attorney for the Director General of Railroads, Pullman Car Lines, and also attorney for the Pullman Company, a corporation of the state of Illinois, and Charles F. Curley, Esq., attorney for Patrick Riley, claimant in the above proceeding, that the Industrial Accident Board be requested to commute the award formerly made in the above case to a cash sum; and further that the Industrial Accident Board be requested to make an award for the cash amount of the commuted award against John Barton Payne, Agent, under *section* 206 of Transportation Act, for the Pullman Car Lines, U. S. Railroad Administration, instead of against the Pullman Company, against whom the award has heretofore been made. The above change in the party awarded against, and the new award above requested not to become effective until the said Director General of Railroads, or some one acting for him, is ready and prepared to pay the amount of the said award.

(Signed by the attorneys.)

The Board made the following order:

Pursuant to an order of the Superior Court New Castle county, April 6, A. D. 1921, the said award made by the Industrial Accident Board of the state of Delaware, April 6, 1920, running against the Pullman Company, a corporation of the state of Illinois, and in favor of Patrick Riley, is hereby modified to run against James G. Davis, Director General of Railroads, Agent, under Transportation Act, 1920. In all other respects the said award shall remain as originally made.

Upon application of Charles F. Curley, Esq., and John W. Huxley, Esq., counsel for the parties to this case, the Industrial Accident Board authorizes and directs that the compensation due under said award up to March 12, A. D. 1921, shall be paid in a lump sum of eleven hundred and fifty dollars ($1,150.00), and that the balance due under said award shall be commuted at its value on March 12, A. D. 1921, when discounted at five per cent. interest, with annual rests, which value is hereby determined as twenty-three hundred and forty-eight dollars and nineteen cents ($2,348.19).

This commutation is authorized by the Industrial Accident Board in order to insure full payment of the amount of compensation due under said award out of the fund created for such purpose now under control of James G. Davis, Director General of Railroads, Agent, under Transportation Act, 1920.

Upon payment of such amount, the employer shall be discharged from all further liability on account of the injury sustained by Patrick Riley on December 13, A. D. 1918.